UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

LOTUS BUSINESS GROUP LLC,

        Plaintiff,

        v.                                                Case No. 07-C-0144

FLYING J INC.,

        Defendant.

**DECISION AND ORDER DENYING PLAINTIFF'S MOTION TO ALTER JUDGMENT AND FOR RECONSIDERATION AND GRANTING DEFENDANT'S MOTION TO DISMISS COUNTERCLAIM**

### I. PROCEDURAL BACKGROUND

On October 12, 2007, this court issued a decision and order granting the defendant's motion for summary judgment. Thereafter, on October 19, 2007, plaintiff Lotus Business Group LLC ("Lotus") filed a motion to alter judgment and for reconsideration. On November 6, 2007, the defendant filed its response to the plaintiff's motion. The plaintiff's motion to alter judgment and for reconsideration is now fully briefed and is ready for resolution. For the reasons which follow, the plaintiff's motion will be denied.

Furthermore, on October 31, 2007, defendant Flying J Inc. ("Flying J") filed a motion to dismiss counterclaim pursuant to Fed. R. Civ. P. 41. The plaintiff has filed no response to the defendant's motion. The defendant's motion will be granted.

## II. LEGAL STANDARDS

A Rule 59(e) motion "'is not intended to allow the parties to relitigate old issues, to advance new theories, or to rehear the merits of a case.'" *Diebitz v. Arreola*, 834 F. Supp. 298, 302 (E.D. Wis. 1993) (quoting *Renfro v. City of Emporia, Kansas*, 732 F. Supp. 1116, 1117 (D. Kan. 1990)). "A Rule 59(e) motion may be granted only if 'there has been a mistake of law or fact or new evidence has been discovered that is material and could not have been discovered previously.'" *Vicom, Inc. v. Harbridge Merchant Services, Inc.*, 20 F.3d 771, 785 n.13 (7th Cir. 1994) (quoting *Figgie Int'l, Inc. v. Miller*, 966 F.2d 1178, 1179 (7th Cir. 1992)); *see also Federal Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1268 (7th Cir. 1986) ("Motions for a new trial or to alter or amend a judgment must clearly establish either a manifest error of law or fact or must present newly discovered evidence."). And the decision whether to grant such motions is left to the sound discretion of the trial court. *Diebitz*, 834 F.Supp. at 302-303 (citing *Leigh v. Engle*, 723 F. Supp. 1272, 1273 (N.D. Ill. 1989)).

In *Database America, Inc., v. BellSouth Advertising and Publishing Corp.*, 825 F. Supp. 1216, 1220 (D.N.J. 1993), the court held that:

> A motion for reconsideration or to alter or amend a judgment may be made for one of three reasons: "(1) [A]n intervening change in the controlling law has occurred, (2) evidence not previously available has become available, or (3) it is necessary to correct a clear error of law or prevent manifest injustice." . . . A motion for reconsideration is not a vehicle to reargue the motion or to present evidence which should have been raised before. . . . "A party seeking reconsideration must show more than a disagreement with the Court's decision, and 'recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden.'"

*Id.*

Lotus argues that the recent decision of the United States Supreme Court in *Leegin Creative Leather Products, Inc*. v. *PSKS, Inc*., 127 S. Ct. 2705 (2007) holds that vertical price restraints are to be judged according to the rule of reason rather than the *per se* rule. As such, according to Lotus, a rule of reason determination is required prior to a finding of whether a vertical price restraint is a violation of the Sherman Antitrust Act.

### III. DISCUSSION

In *Leegin*, the Supreme Court held that "[v]ertical price restraints are to be judged according to the rule of reason." 127 S. Ct. at 2725. In doing so, the Supreme Court overruled the holding in *Dr. Miles Medical Co. v. John D. Park & Sons Co.*, 220 U.S. 373 (1911), which stated that vertical price restraints were a *per se* violation of the Sherman Act. Under the rule of reason, "'the factfinder weighs all of the circumstances of a case in deciding whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition.'" *Leegin*, 127 S. Ct. at 2712 (quoting *Continental T. V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 49 (1977)). "Appropriate factors to take into account include 'specific information about the relevant business' and 'the restraint's history, nature, and effect.'" *Id*. (quoting *State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997)). "Whether the businesses involved have market power is a further, significant consideration." *Id*.

In contrast, "[r]esort to *per se* rules is confined to restraints, like those mentioned [horizontal agreements among competitors to fix prices or to divide markets], 'that would always or almost always tend to restrict competition and decrease output.'" *Id*. at 2713 (quoting *Business Electronics Corp. v. Sharp Electronics Corp*., 485 U.S. 717, 723 (1988)). "[T]he *per se* rule is appropriate only after courts have had considerable experience with the type of restraint at issue . . . and only if courts

3

can predict with confidence that it would be invalidated in all or almost all instances under the rule of reason." *Id*.

Given the Supreme Court's holding in *Leegin*, Lotus is correct in arguing that vertical price restraints are to be judged according to the rule of reason rather than the *per se* rule. Nevertheless, more particularly applying the holding in *Leegin* would not alter this court's decision that Wisconsin's minimum markup statute violates the Sherman Act. In its Decision and Order of October 12, 2007, this court did not predicate its holding that the Wisconsin minimum markup statute was inconsistent with the Sherman Act on the proposition that vertical restraints on resale prices were a *per se* violation of § 1 of the Sherman Act. Rather, this court held that the Wisconsin minimum markup statute was inconsistent with the Sherman Act because the statute "fixes resale prices industrywide," and "[m]andatory industrywide resale price fixing is virtually certain to reduce interbrand competition as well as intrabrand competition, because it prevents manufacturers and wholesalers from allowing or requiring retail price competition." (Decision and Order at 10) (quoting *324 Liquor Corp. v. Duffy*, 479 U.S. 335, 342 (1987)).

That a statute which fixes resale prices industrywide is virtually certain to reduce interbrand competition, and therefore violates the Sherman Act, is a finding that is consistent with the Supreme Court's decision in *Leegin*. As noted by the Supreme Court in *Leegin*, "the antitrust laws are designed primarily to protect interbrand competition, from which lower prices can later result." 127 S. Ct. at 2718. Moreover, the Court in *Leegin* stated that, in contrast to a situation where "only a few manufacturers lacking market power adopt the practice, . . . [r]esale price maintenance should be subject to more careful scrutiny . . . if many competing manufacturers adopt the practice." *Id*. at 2719 (citing F.M. Scherer & D. Ross, Industrial Market Structure and Economic Performance 558

4

(3d ed.1990) (finding that "except when [resale price maintenance] spreads to cover the bulk of an industry's output, depriving consumers of a meaningful choice between high-service and low-price outlets, most [resale price maintenance arrangements] are probably innocuous"); Frank H. Easterbrook, Vertical Arrangements and the Rule of Reason, 53 Antitrust L.J. 135, 162 (1984) (stating that "every one of the potentially-anticompetitive outcomes of vertical arrangements depends on the uniformity of the practice")).

Furthermore, although the parties have not submitted in connection with this motion for reconsideration any additional evidence regarding the procompetitive and anticompetitive effects of the Wisconsin minimum markup statute, the evidence that was submitted previously in connection with the motion for summary judgment would support a finding that the statute is inconsistent with the Sherman Act under the rule of reason. To be sure, the plaintiff submitted an article describing a 2004 study at the University of Wisconsin-Whitewater which concludes that states with "sales below costs" laws average lower gas prices. (PPFOF ¶ 5; Ex. E.). However, that article only summarizes the study; it does not provide any conclusions relating to the Wisconsin minimum markup law in particular. The authors concede that the study "contradicts the traditional economic view." Furthermore, as noted by the Supreme Court in *Leegin*, price surveys "'do not necessarily tell us anything conclusive about the welfare effects of [resale price maintenance] because the results are generally consistent with both procompetitive and anticompetitive theories.'" 127 S. Ct. at 2718 (quoting T. Overstreet, Resale Price Maintenance: Economic Theories and Empirical Evidence 106 (1983)).

In contrast, the defendant submitted a detailed report from The Federal Trade Commission which specifically criticized the Wisconsin minimum markup law in 2003. (DPFOF ¶ 18; Ex. C,

5

Federal Trade Commission, Re: Wisconsin's Unfair Sales Act, October 15, 2003, available at http://www.ftc.gov/be/v030015.shtm.). In this report, the FTC concluded that Wisconsin's minimum markup law likely restricts competition and leads to higher prices for consumers. The FTC cited factors specific to the Wisconsin law which led to its conclusion that the statute restricted competition, including the civil damages imposed on vendors who cut costs, the inclusion of the minimum markup percentage in the definition of "cost," the use of one of the steepest minimum markup percentages in the country,[1] and the use of "average terminal price" rather than actual costs. The FTC found that, unlike federal antitrust laws, the Wisconsin minimum markup law protected competitors rather than competition, and contained provisions that directly contravened established antitrust doctrine, as well as basic economic principles and virtually all prominent antitrust scholars.[2] Although the FTC found that all minimum markup laws likely deter pro-competitive pricing, the Wisconsin law "exacerbated these problems."[3]

---

[1] The FTC noted that the 9.18% markup appeared to be "completely arbitrary," and that the highest markup percentage for retail fuel sales is typically 6%. The 9.18% markup exceeded that percentage by 50%.

[2] The FTC cited a study which found that the increase in penalties in the 1998 revision of the Wisconsin minimum markup law increased the average markup by 2 to 3 cents per gallon. *See* J. Brannon and F. Kelly, Pumping Up Gas Prices in Wisconsin: The Effects of the Unfair Sales Act on Retail Gas Prices in Wisconsin, 12 Wisconsin Policy Research Inst. Rep. No. 7 (1999). The FTC noted that this study was consistent with "the growing body of empirical research from the past two decades," which find that minimum markup laws either raise gas prices or leave them unchanged. The FTC specifically criticized the University of Wisconsin-Whitewater study (which was in draft form) that was cited by the plaintiff.

[3] Although the FTC noted the anticompetitive effects of minimum markup laws, which were exacerbated by the provisions of the Wisconsin law, it did not conclude that all vertical price restraints were anticompetitive. Indeed, the Supreme Court in *Leegin* noted that "both the Department of Justice and the Federal Trade Commission-the antitrust enforcement agencies with the ability to assess the long-term impacts of resale price maintenance-have recommended that this Court replace the *per se* rule with the traditional rule of reason." 127 S. Ct. at 2721.

Moreover, although vertical price restraints are to be judged according to the rule of reason, the Supreme Court in *Leegin* made clear that "[a] horizontal cartel among competing manufacturers or competing retailers that decreases output or reduces competition in order to increase price is, and ought to be, *per se* unlawful." 127 S. Ct. at 2717 (see also *Texaco Inc. v. Dagher*, 547 U.S. 1, 5 (2006) ("Price-fixing agreements between two or more competitors, otherwise known as horizontal price-fixing agreements, fall into the category of arrangements that are *per se* unlawful.")). "To the extent a vertical agreement setting minimum resale prices is entered upon to facilitate either type of cartel, it, too, would need to be held unlawful under the rule of reason." *Id*.

Given that "cost" under the Wisconsin minimum markup law is defined as the "average posted terminal price at the terminal located closest to the retailer," competing retailers in a certain geographical area would be required to charge the same minimum price. As such, the Wisconsin statute involves both horizontal and vertical price fixing. *See 324 Liquor Corp. v. Duffy*, 479 U.S. 335, 342 (1987) (noting that "wholesalers in *Midcal* were required to adhere to a single fair trade contract or price schedule for each geographical area," and that "*Midcal* therefore involved horizontal as well as vertical price fixing."). In other words, to the extent that the provisions of the Wisconsin statute create vertical price restraints, they also facilitate the creation of horizontal price fixing. Such being the case, in this court's view the statute is inconsistent with § 1 of the Sherman Act under both the rule of reason and the *per se* rule.

In sum, the Wisconsin minimum markup statute is inconsistent with § 1 of the Sherman Act, even under the rule of reason. Wisconsin's minimum markup statute fixes resale prices industrywide, and is virtually certain to reduce interbrand competition. This finding is consistent with studies that have specifically analyzed the anticompetitive effects of Wisconsin's statute.

7

Furthermore, the Wisconsin minimum markup statute involves horizontal price fixing, a *per se* violation of the Sherman Act. In light of such determination, the plaintiff's motion to alter judgment and for reconsideration will be denied.

Finally, as previously stated, on October 31, 2007, the defendant filed a motion to dismiss its counterclaim pursuant to Fed. R. Civ. P. 41. In its motion, the defendant asserts:

> Pursuant to Rule 41 Fed. R. Civ. P. and in conjunction with this Court's Order Granting Summary Judgment on the Plaintiff's claims because of the unconstitutionality of the Wisconsin Markup Statute, Defendant, Flying J Inc., moves the Court to dismiss, *without prejudice*, its Counterclaim, which is based on the same unconstitutional Wisconsin Minimum Markup Statute.

The plaintiff has not filed any response or objection to the defendant's motion. The defendant's motion will therefore be granted.

**NOW THEREFORE IT IS ORDERED** that the plaintiff's motion to alter judgment and for reconsideration be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that the defendant's motion to dismiss its counterclaim be and hereby is **GRANTED**;

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**.

**SO ORDERED** this 27th day of November 2007, at Milwaukee, Wisconsin.

/s/ William E. Callahan, Jr
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge

8